**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SALVATORE J. GIARRIZZO,**

                              **Plaintiff,**

                                                                    **07-CV-0801**
          **vs.**                                                   **(NAM/GHL)**

**MICHAEL B. MUKASEY, United States**

**Attorney General,**

                              **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

Salvatore J. Giarrizzo
102 Frasier Avenue
Johnstown, New York 12095
*Plaintiff Pro Se*

Richard Hartunian                       Charles E. Roberts, Esq.
United States Attorney for              Assistant U.S. Attorney
the Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorney for Defendant*

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        Plaintiff brings this action, *pro se*, pursuant to 42 U.S.C. § 2000e et seq. ("Title VII")

based on the gender discrimination he claims to have suffered during his employment with the

Federal Bureau of Investigation ("FBI").  Presently before the Court are three motions.  On

January 4, 2008, plaintiff filed a motion pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure for judgment on the pleadings claiming that defendant's answer failed to comport with the requirements of Rule 8 of the Federal Rules of Civil Procedure. (Dkt. No. 14).  Defendant opposed plaintiff's motion. (Dkt. No. 20).  On June 30, 2008, defendant filed a motion pursuant to Rule 12(c) for judgment on the pleadings based upon the following grounds: (1) plaintiff failed to exhaust his administrative remedies with regard to his Title VII claims for gender discrimination; (2) plaintiff failed to allege facts that constitute an adverse employment action to support claims of gender discrimination; and (3) plaintiff failed to establish a *prima facie* claim of retaliation. (Dkt. No. 49).  Plaintiff opposed defendant's motion. (Dkt. No. 51).  On August 27, 2008, plaintiff filed a motion pursuant to Rule 15 to supplement the complaint. (Dkt. No. 57). Defendant opposed the motion. (Dkt. No. 59).

Additionally, the Court, *sua sponte*, addresses the issue of the propriety of the Sealing Order dated January 13, 2009.

## FACTS[1]

From January 4, 1998 until August 6, 2004, plaintiff was employed as a Special Agent of the FBI.  From April 1998 until August 2004, plaintiff was assigned to the FBI's Philadelphia Division.  On February 21, 2003, plaintiff requested and received a 60 day hardship temporary assignment to the Albany Division.  In April 2003, plaintiff received a 30 day extension of the assignment.  On May 21, 2003, plaintiff received a 120-day extension to remain in the Albany Division.  On September 12, 2003, plaintiff submitted a request for a permanent medical hardship

---

[1] The facts are taken from the complaint and are not findings of fact by the Court. Defendant moves for judgment on the pleadings, therefore, the Court assumes the facts asserted in the complaint to be true for the purposes of that motion.

transfer to Albany, New York.[2]

The FBI's Manual of Administrative Operations ("MAOP") § 11-4.1 - Medical Hardship provides:

> (1) A request for transfer based on a medical hardship must be forwarded to FBIHQ (FBI Headquarters) through the employee's SAC (Special Agent in Charge) or division head. Medical hardship transfer requests must be accompanied by supporting medical documentation (conditions existing prior to employee's entry on duty will generally not be considered of a hardship nature). Hardship transfers may be granted, consistent with staffing needs, for articulated medical reasons such as the need to be in a specific geographic area or near a specific medical facility to address the health needs of the employee, spouse, child or legal dependent. Medical hardship requests are reviewed by the Chief Medical Officer (CMO), FBIHQ, and in some instances by other specialists. Alternatives to a permanent hardship transfer must first be examined, such as requesting a temporary hardship assignment. A permanent hardship transfer request should not be the first course of action.

> (2) The SAC or division head must interview the employee concerning the circumstances of the hardship. Results of the interview with specific recommendation for action must accompany the request.

Plaintiff was not interviewed in connection with his transfer request. On October 1, 2003, Dr. James Yoder, an FBI medical officer, issued a memorandum concluding that plaintiff's request should be denied due to inadequate medical justification.[3] On October 8, 2003, Deputy Assistant Director Kevin Kendrick wrote a letter to plaintiff denying plaintiff's transfer request.[4]

---

[2] Plaintiff's transfer requests are not in the record and plaintiff's complaint does not contain any information regarding why he sought the transfer. While the record contains some information regarding defendant's evaluation of plaintiff's transfer requests, without competent, admissible evidence, the Court will not speculate on the reasons why plaintiff sought a transfer.

[3] The record does not include the memorandum. However, Dr. Yoder provided a sworn statement which is part of the record herein.

[4] The letter is not part of the record. However, Kendrick provided a sworn statement which is part of the record herein.

Plaintiff alleges that the letter stated, "[t]he Medical Officer opined you and your wife have made personal decisions based primarily upon economic and professional factors".

On December 29, 2003, plaintiff appealed his transfer denial to the FBI Hardship Transfer Review Board ("HTRB").[5]  In his appeal, plaintiff compared his transfer request with the transfer request of a female agent, Karen Johnson, and addressed the agency's failure to conduct the appropriate interviews in connection with his request.  The Transfer Unit did not acknowledge receipt of plaintiff's appeal until February 2, 2004.  While plaintiff's appeal was pending, he contacted FBI Ombudsman, Sarah Ziegler, for assistance.[6]  On February 24, 2004, plaintiff (and several other Philadelphia agents), received an email from Philadelphia Division FBI Supervisor Pamela Kirschner.  Kirschner advised that:

> . . . constant whining in the division must stop . . [the SAC] will no longer tolerate the indifference to management's decisions or the process in which the decisions are made . . . [t]he SAC clearly stated that there would be negative consequences to pay for people that constantly complain and go outside their "chain of command".

On March 12, 2004, plaintiff received a letter from Assistant Director Mark Bullock advising that the HTRB denied plaintiff's appeal.[7]  In early March 2004, plaintiff contacted an EEO counselor.[8]

---

[5] Plaintiff's appeal is not part of the record.

[6]   The Office of the Ombudsman is available to any FBI employee who requests assistance in developing options for resolving the unique workplace challenges that an employee might experience in an organization with a complex, critical mission. The Ombudsman provides the Director and executive management with feedback on issues that surface which have a potential for significant impact on personnel, and on the efficiencies and effectiveness of operations. All issues raised to the Office of the Ombudsman are explored in an informal, confidential manner. http://www.fbijobs.gov (last visited May 25, 2010).

[7] The letter is not part of the record herein.

[8] There is no documentation in the record establishing the exact date of the alleged contact or the name of the counselor.

On March 16, 2004, plaintiff received an email from FBI Ombudsman Ziegler advising that plaintiff could appeal to Executive Assistant Director ("EAD") Wilson Lowery at FBI Headquarters ("FBIHQ").[9]  On May 11, 2004, plaintiff forwarded a letter to EAD Lowery advising that during the course of his transfer request, he discovered, "other agents, including a female agent who submitted a recent hardship transfer request, received selective assistance from the Transfer Unit in gaining transfer approval".[10]  In the correspondence, plaintiff again compared his request with Agent Johnson's request.  On May 14, 2004, plaintiff received email confirmation that Lowery received and was analyzing plaintiff's appeal.  Plaintiff received no further correspondence from Lowery.  On May 20, 2004, plaintiff met with Philadelphia Division Assistant SAC Robert Downey in the Philadelphia office.  Downey told plaintiff that he should not have contacted Lowery and directed plaintiff to refrain from having any additional communication, email or otherwise, with the Office of EAD.

In June 2004, plaintiff was approved for Family and Medical Leave.  Prior to plaintiff's leave, Kirschner and Downey informed plaintiff that he would not be able to use his FBI vehicle while on leave. On July 14, 2004, Ziegler wrote a letter to plaintiff advising that his, "right to formal appeal ended with the hardship transfer review board; however, employees do have a right to informally appeal through the chain of command up to and including the Director . . . you are entitled to contact your Congressman".  In a letter dated July 20, 2004, plaintiff contacted Congressman Michael McNulty.

---

[9] The email is not part of the record herein.

[10] The letter is not part of the record herein.

On July 27, 2004, plaintiff telephoned Special Agent Denise Day[11] and advised that EAD Solomon[12] was not aware of plaintiff's request to Lowery and that Solomon had been advised that, "there was no pending hardship request". On July 27, 2004, plaintiff received a Notice of Right to File a Discrimination Complaint. On July 28, 2004, plaintiff filed a Complaint of Discrimination (Form DOJ 201A).

On August 6, 2004, while still on extended leave, plaintiff resigned from the FBI. Kirschner directed plaintiff to travel to Philadelphia to return FBI property including his weapon, credentials, credit card and telephone. In addition, plaintiff was required to attend a "separation interview". Plaintiff requested that he be able to tender his resignation at the Albany office. That request was denied. Plaintiff rented an automobile with his FBI credit card and drove to the Philadelphia office to meet with Downey. On August 9, 2004, Agent Day issued a Report of Counseling.[13]

In a letter dated September 7, 2004, Downey informed plaintiff that his trip to the Philadelphia office was not official travel and further advised plaintiff that he was responsible for the automobile rental charges. Plaintiff continued to receive debt collection letters from the FBI. On November 9, 2004, plaintiff received a collection letter addressed to his home from Bank One.

On March 3, 2006, the ALJ granted the agency's motion for a decision without a hearing. The ALJ concluded:

> . . . [plaintiff] has failed to set forth the intentional discrimination required to make a finding of discrimination in this case. Wherefore,

---

[11] According to the record, Denise Day was an EEO counselor.

[12] EAD Solomon was EAD Lowery's successor.

[13] The report is not part of the record.

> viewing all of the evidence in the light most favorable to [plaintiff], I conclude that [plaintiff] has failed to establish, by a preponderance of the evidence, that he was discriminated against based on his sex or prior EEO activity.[14]

On April 12, 2006, the EEOC issued a final order adopting the ALJ's finding. Plaintiff appealed and on May 16, 2007, the EEOC issued a decision affirming the final order. In the decision, the Director of the Office of Federal Operations stated, "[c]omplainant filed a complaint alleging that he was discriminated against on the bases [sic] of sex (male) and in retaliation for prior EEO activity, when on March 12, 2004, his request for a hardship transfer was denied". Plaintiff was advised of his right to sue.

## COMPLAINT

In the complaint, plaintiff asserts two causes of action. Plaintiff alleges that defendant discriminated against him in violation of Title VII and alleges "unfair advantage to female agents, when pursuing medical hardship transfers". Plaintiff lists several instances of discrimination including:

> [Bill] Lewis, in his capacity as chief of the FBI Transfer Unit, discriminated against plaintiff by preemptively denying any permanent transfer opportunity for plaintiff months before plaintiff . . . submitted [a] written request for such a transfer. (Complaint ¶ 172).

> FBI officials discriminated against plaintiff by denying plaintiff a MAOP-required SAC interview. (Id. ¶ 173).

> Plaintiff was held to a discriminatory unfair disadvantage - a "double standard" - which his transfer denial was justified by lack of FBI medical officer support . . . [h]owever, transfer requests for two female agents with five medical officer "denials" and no medical officer "approvals" between them were both approved by the Transfer Unit. (Id. ¶ 174).

---

[14] The decision is part of the sealed record on file with the court.

Plaintiff was held to a stricter and discriminatory standard of approval when FBI officials broadly noted in plaintiff's case " . . . requests for transfer based upon the outside employment of an Agent's non-Bureau spouse are considered preferential in nature, and are not approved regardless . . ." At least one female agent transfer was approved solely to maintain outside employment income for her non-Bureau spouse. (Id. ¶ 175).

Plaintiff was held to a far stricter, discriminatory standard of transfer consideration and treatment when FBI officials claimed policy and procedure had been followed in this case, but applied a wholly different standard in the case of at least one female agent.  FBI officials used false statements . . . in the approval of this female agent's transfer. (Id. ¶ 176).

FBI officials placed plaintiff at a discriminatory disadvantage when violating MAOP in his case. These violations included an ignored interview requirement and non-random HTRB membership selection. (Id. ¶ 177).

The plaintiff was discriminated against when FBI Transfer Unit officials provided selective assistance to at least one female agent by providing specific instruction on what documentation to provide to ensure approval.  (Id. ¶ 179).

Plaintiff also alleges that he suffered from retaliatory acts, omissions and harassment as a result of "plaintiff's written and voice opposition to discriminatory practices", contacting an EEO counselor, filing a complaint and contacting a Congressman.  These acts included:

FBI officials knowingly denied plaintiff any benefit which might have resulted from an unfulfilled but required SAC interview, despite the fact that plaintiff made the omission known to FBI officials in writing in plaintiff's HTRB appeal document. (Complaint ¶ 182).

The Transfer Unit retaliated against plaintiff by claiming to not have received plaintiff's HTRB appeal documentation until several weeks after it was electronically and physically sent to the Transfer Unit, causing weeks of unnecessary delay. (Id. ¶ 183).

. . . [t]he Transfer Unit selected the voting members of the HTRB assigned to plaintiff's case.  HTRB members were not selected "at random on a rotational basis" as written policy requires; instead,

members whose voting history was well-known were used to "stack the deck" against plaintiff. (Id. ¶ 184).

In retaliation for plaintiff's complaints, no EEO action was taken in plaintiff's case following his March 2004 contact with an EEO Counselor. (Id. ¶ 185).

In a retaliatory act, no action by EAD Lowery with respect to plaintiff's informal appeal right was taken, despite a May 14, 2004 written response from the Office of EAD advising of a "detailed analysis" of plaintiff's request. (Id. ¶ 186).

. . . compromised plaintiff's "informal appeal rights" by allowing approximately eleven (11) weeks to pass following plaintiff's EAD appeal. (Id. ¶ 187).

[t]he May 2004 admonishment by Downey for contacting EAD, and plaintiff's repeated communications with the FBI Ombudsman. (Id. ¶ 188).

Lewis retaliated against plaintiff by misleading an OEEOA investigator and thereby compromising the official investigation into plaintiff's discrimination complaint. (Id. ¶ 189).

Plaintiff was admonished in-person by a Philadelphia ASAC for contacting EAD. (Id. ¶ 191).

. . . a FBI official made misrepresentations to plaintiff's Congressman . . . advanc[ing] an ongoing effort by FBI officials to discredit plaintiff and compromise plaintiff's right to obtain fair congressional assistance. (Id. ¶ 192).

Plaintiff was made to travel approximately 300 miles to Philadelphia to effect his resignation. (Id. 196).

Plaintiff was subjected to continuing retaliation by the FBI in the form of harassing debt collection letters from FBI Philadelphia, as well as a refusal by the FBI to pay for a legitimate FBI expense. (Id. 198).

Plaintiff claims that from June 1990 through June 2005, the male transfer approval rate was 51.4 percent and the female transfer approval rate was 62.5 percent. Plaintiff further alleges that from 2002 through 2005, the male agent transfer approval rate dropped to 39.2 percent while

9

the female transfer approval rate remained consistent.  Plaintiff also claims that from June 1990 through June 2005, no female agent had a transfer review denied by the HTRB.

## DISCUSSION

### I.   PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS/MOTION TO STRIKE

On January 4, 2008, plaintiff filed a motion seeking judgment on the pleadings.  Plaintiff argues that defendant's answer (Dkt. No. 8) to paragraphs 36-54; 57-63; 66; 68-84; 202-207; and 211 of plaintiff's complaint violates Rule 8(b)(2) of the Federal Rules of Civil Procedure.  Specifically, plaintiff claims that defendant failed to deny plaintiff's allegations or to advise that defendant was without sufficient knowledge or information necessary to respond to the allegations.  Plaintiff requests that the Court deem the relevant allegations admitted and enter judgment in favor of plaintiff.  Defendant argues that plaintiff's motion seeks unwarranted relief and plaintiff, "should make an appropriately framed and limited application to the Court".

Before addressing the merits of plaintiff's motion, the Court must address the parties subsequent submissions and events that transpired after plaintiff commenced motion practice.  On January 7, 2009, with plaintiff's motion pending, defendant filed a motion for leave to file an amended answer. (Dkt. No. 67).  In the motion, defendant acknowledged plaintiff's, "repetitive objections" to defendant's refusal to respond to allegations in the complaint involving Agent Johnson.  Defendant submitted a proposed amended answer which, defendant claimed, would address plaintiff's concerns.  On April 20, 2009, United States Magistrate Judge George H. Lowe granted defendant's motion. (Dkt. No. 89).  On April 22, 2009, defendant filed an amended answer. (Dkt. No. 91).  Plaintiff did not file any motion or submit any objection specifically addressing the amended answer.  However, on February 12, 2010, plaintiff provided Magistrate

10

Judge Lowe with an "update regarding pending motions and discovery" and advised that, "[m]y motion for judgment on the pleadings, filed January 4, 2008, is still pending".  (Dkt. No. 120). On February 26, 2010, Magistrate Judge Lowe issued an Order acknowledging, *inter alia*, that plaintiff's motion for judgment on the pleadings was *sub judice*.  (Dkt. No. 121).

Plaintiff's motion addressed the alleged inadequacies in defendant's original answer and was filed prior to the amended answer.  While the motion arguably has been rendered moot by the service of the amended answer, it is clear, from events that have transpired since the filing of the amended answer, that plaintiff has continued objections to defendant's responses and amended answer.  Thus, in the interest of judicial economy and given plaintiff's *pro se* status, the Court will address plaintiff's arguments and resolve this issue.

Despite plaintiff's reliance upon Rule 12(c), the Court will treat the within motion as a motion to strike defendant's answer pursuant to Rule 12(f).[15]   *See Saratoga Harness Racing, Inc. v. Veneglia*, 1997 WL 135946, at *3 (N.D.N.Y. 1997). The court's power to strike on its own initiative at any time allows it to consider untimely motions to strike.  *Id*.  A court may strike, *sua sponte*, any redundant, impertinent, scandalous or immaterial matter from any pleading.  *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995); *Esmont v. City of New York*, 371 F.Supp.2d 202, 218 n. 14 (E.D.N.Y. 2005).  "Motions to strike are generally not favored and will be denied unless it is

---

[15] Pursuant to Rule 12(f):

> the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12.

clear that under no circumstances could the defenses succeed." *PHH Fleetamerica Corp. v. Crawford & Co., Inc.*, 1995 WL 424986, at *4 (S.D.N.Y. 1995); *see also New York v. Micron Tech., Inc.*, 2009 WL 29883, at *3 (N.D. Cal. 2009) ("A defense is not ordinarily held to be insufficient unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved to support the defense, and are inferable from the pleadings.").

In the original and amended answer, defendant declined to respond to plaintiff's allegations in paragraphs 36-54; 57-63; 66; 68-84; 202-207; 211 claiming that any response would disclose information protected by the Privacy Act, 5 U.S.C. § 552 *et seq*. Defendant contends that, "any response by the FBI, either confirming or denying plaintiff's allegations regarding FBI employment records, necessarily would disclose those records or their contents - regardless of where plaintiff says he obtained them". Defendant's answer to plaintiff's allegations in the aforementioned paragraphs reads as follows:

> The allegations in paragraphs [] pertain to transfer requests of two female FBI agents. Any response to these allegations would necessarily disclose information that is or may be prohibited under the Privacy Act, and therefore no response will be made.

*See* Defendant's Amended Answer (Dkt. No. 91) (paragraph numbers omitted).

Pursuant to Rule 8(b), "[i]n responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party." A party which "lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state," and said statement has the same effect of a denial. Fed. R. Civ. P. (8)(b)(5). Moreover, Rule 8(d) provides:

> Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which

12

no responsive pleading is required or permitted shall be taken as denied or avoided.

Defendant relies upon the Privacy Act and contends that, "any substantive response in the face of the foregoing could incur both civil liability and criminal penalties". Under the Privacy Act, government agencies can release information about individuals only under certain circumstances, including pursuant to a court order. *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002). However, the Privacy Act creates neither a qualified discovery privilege nor any other kind of privilege or bar. *Id.* To protect information which is legitimately confidential from unauthorized disclosure to third parties, the court may issue a protective order. *Feature Films Servs., Inc. v. Arts & Entm't Network Corp.*, 1991 WL 290677, at *1 (N.D.Ill. 1991) (holding that the concern over confidentiality is disposed of by a protective order entered in the case six months prior at the defendant's insistence); *see also Pleasants*, 208 F.R.D. at 12 (court ordered the defendant to respond to interrogatories and document requests after a protective order issued); *see also Laxalt v. McClatchy*, 809 F.2d 885, 888-89 (D.C. Cir. 1987) (holding that traditional devices such as protective orders and *in camera* inspection offer reliable means with which to limit liberal discovery principles); *see also Marshall v. New York City Transit Auth.*, 1984 WL 380, at *6 (S.D.N.Y. 1984) (the defendants were directed to answer the plaintiff's interrogatories and to submit for *in camera* inspection those documents which they claimed were privileged).

Whether Special Agent Johnson's records are protected by the Privacy Act and whether defendant is obligated to maintain confidentiality is beyond the scope of plaintiff's motion. The discovery or disclosure of Agent Johnson's personnel file has no bearing on whether defendant is obligated to comply with Federal Rule 8(b) and provide plaintiff with a response to his allegations. Here, the issue pending before the Court, at this juncture, is simply whether

13

defendant should be compelled to replead the answer pursuant to Fed. R. Civ. P. 8.   The Court has reviewed the entire record and finds that defendant failed to admit or deny certain paragraphs of the complaint.   The Court further finds defendant's arguments with respect to privacy and confidentiality unpersuasive.   The Court has already taken steps to ensure that Agent Johnson's records remain confidential.   On August 15, 2008, upon motion by defendant, Magistrate Judge Lowe issued a Protective Order pursuant to Rule 26(c) and the Privacy Act.[16] (Dkt. No. 56).   In the Court's view, any dispute regarding the confidentiality issues has already been resolved by the Protective Order.[17]

     This case does not warrant an Order striking defendant's amended answer.   However, the Court will discuss the issue of whether defendant must amend the answer and properly respond to plaintiff's complaint according to Rule 8(b) after addressing defendant's dispositive motions.

_____

[16] The Protective Order provides, in pertinent part:

> . . . this Order shall govern the production and use in the above-captioned action of any records, documents and/or information that (1) may be Privacy Act-protected and/or might otherwise intrude upon the privacy interests of present or former government employees . . .

> . . . Protected Materials shall be marked "CONFIDENTIAL" PRODUCED SUBJECT TO PROTECTIVE ORDER".

> All computerized or electronic databases that contain employee names and social security numbers may be given unique identifiers by defendant before being produced to plaintiffs . . .

> Protected Materials . . . shall be distributed to, and used by, only [plaintiff] for the sole purpose of this litigation and shall not be disclosed in any manner whatsoever . . ..

[17] The Court notes that on January 13, 2009, upon defendant's motion, Magistrate Judge Lowe ordered the Clerk of the Court to place all present and future filings under seal.  (Dkt. No. 69).  However, the Court will address the Sealing Order *infra*.

## II.    DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant moves for judgment on the pleadings claiming that plaintiff: (1) failed to exhaust his administrative remedies; (2) failed to allege an adverse employment action sufficient to sustain a cause of action for gender discrimination; and (3) failed to establish a *prima facie* case of retaliation.

### A.    Rule 12(c) Standard

The standard for a motion for judgment on the pleadings is identical to that applied to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002). Therefore, in addressing defendant's motion the Court accepts as true all of the factual allegations in the complaint and draw inferences from those allegations in the light most favorable to plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) . Plaintiff filed the complaint *pro se*, thus his pleading should be held "'to less stringent standards than formal pleadings drafted by lawyers . . .'". *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Ordinarily, the Court must decide a Rule 12(c) motion to dismiss based upon the allegations in the complaint. The Court, however, may also consider "documents that the plaintiff either possessed or knew about and upon which [he] relied in bringing the suit". *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Moreover, in light of the plaintiff's *pro se* status, the Court considers his submissions outside the pleadings. *Martinez v. Sulner*, 2006 WL 737137, at *4 (S.D.N.Y. 2006).

B.        **Exhaustion of Administrative Remedies**

An employee suing the federal government for employment discrimination must exhaust certain administrative remedies before initiating a lawsuit in federal court. *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000).  As a federal employee, plaintiff was required to initiate contact with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act or, within 45 days of the effective date of the challenged personnel action.  *Khaleel v. Potter*, 307 F.App'x 527, 528-529 (2d Cir. 2009) (citing 29 C.F.R. § 1614.105(a)(1)); *see also Milano v. Astrue*, 2008 WL 4410131, at *28 (S.D.N.Y. 2008).  The 45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred. *Ercole v. U.S. Dep't of Transp.*, 2008 WL 4190799, at *4 (E.D.N.Y. 2008) (citing *inter alia*, *Downey v. Runyon*, 160 F.3d 139, 145-46 (2d Cir.1998)).  However, the statutory requirement for filing is subject to waiver, estoppel and equitable tolling.  *Briones v. Runyon*, 101 F.3d 287, 290 (2d Cir. 1996).  The time period begins to run when the plaintiff is aware of the actual adverse employment action, not when the plaintiff obtains information that leads him to believe that an adverse employment action is unlawful.  *Milano*, 2008 WL 4410131, at *29.

Pendency of a grievance, or some other method of collateral review of any employment decision, does not toll the running of the EEO limitations period.  *Paladino v. Potter*, 2009 WL 2750703, at *1 (2d Cir. 2009) (holding that the plaintiff's 45 day period began to run when she was terminated and her participation in the union grievance process would not toll the period) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980)); *see also Arias-Mieses v. CSX Transp., Inc.*, 630 F.Supp.2d 328, 332 (S.D.N.Y. 2009) (holding that it was inconsequential that the

plaintiff appealed his termination or that an appeal hearing was held); *see also Rosario v. Potter*, 2009 WL 3049585, at *6 (S.D.N.Y. 2009) ("[t]he grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made . . .") ; *see also Royce v. U.S. Postal Serv.*, 1988 WL 131654, at *2 (W.D.N.Y. 1988) (holding that the date of the discriminatory act was the date that of discharge not the date that the supervisory employee refused to reinstate the plaintiff).

Here, defendant argues that based upon plaintiff's admissions and pleading, the FBI denied his "actual written transfer request" on October 8, 2003.  Therefore, defendant reasons that plaintiff was required to contact an EEO counselor on or before November 22, 2003.  In the complaint, plaintiff claims that he first contacted an EEO counselor in "early March 2004".  Thus, defendant contends that plaintiff's gender discrimination claim is time-barred and should be dismissed.  Plaintiff argues that the date of the "discriminatory act" was March 12, 2004; the date of the HTRB decision.  Plaintiff further alleges that defendant waived the right to assert an "untimely" defense because the Office of Equal Employment Opportunity Affairs ("OEEOA") and Department Of Justice ("DOJ") Complaint Adjudication Office determined plaintiff's action was timely and issued a "right-to-sue" letter on May 16, 2007.[18]

### 1.    Date of Alleged Discriminatory Act

The parties dispute the date of the alleged "discriminatory act" for the purposes of calculating the 45-day time period.  In the complaint, plaintiff claims that Deputy Assistant Director Kevin Kendrick denied his transfer request in a letter dated October 8, 2003.  While

---

[18] Plaintiff claims that defendant, "cannot provide an EEO contact date".  While the record does not contain any documentation establishing the exact date that plaintiff first contacted an EEO counselor.  Defendant argues: '[b]ecause plaintiff's complaint does not indicate specifically when in March 2004 he contacted an EEO counselor, defendant will presume March 1, 2004 in order to give plaintiff the most expansive 45 day period possible.  The Court adopts defendant's argument.

plaintiff admits that he first contacted an EEO counselor in "early March 2004", he contends the contact was timely because "the discriminatory act" occurred when his request for hardship transfer was denied by the HTRB on March 12, 2004.  Plaintiff cites to his Complaint of Discrimination, submitted on July 28, 2004, which identified the date of the most recent discrimination as "March 12, 2004 and continuous to date".[19]

The Court has reviewed the record and finds conflicting evidence regarding the date of the alleged discriminatory act.  The record contains the sworn statement of James E. Yoder, a Medical Officer with the FBI's Health Care Programs Unit dated November 18, 2001 and the sworn statement of Kendrick dated November 9, 2004.  In those statements, Kendrick and Yoder both aver:

> I understand the issue under investigation is whether S.J. Giarrizzo was discriminated against based upon his sex (male) and reprisal for opposition to what he believed was unlawful discrimination, when by letter dated March 12, 2004, he was informed that his hardship transfer was denied.

Moreover, in a certified letter addressed to plaintiff and dated August 31, 2004, Veronica Venture, an EEO Officer stated:

> Accepted for investigation is the following allegation:
>
> Whether you were discriminated against based on your sex (male) and reprisal for opposition to what you believe was unlawful discrimination when by letter dated March 12, 2004, you were informed that your hardship transfer was denied.

Finally, in the EEOC Decision dated March 2006, the ALJ noted:

> The claim is whether the Agency unlawfully discriminated against Complainant based on his sex (male) and/or in reprisal for his prior

---

[19] In opposition to defendant's motion, plaintiff provided a copy of the July 28, 2004 Complaint of Discrimination.

> EEO activity (opposition to unlawful discrimination) when, by letter
> dated March 12, 2004, he was informed that his hardship was denied?

This evidence seemingly supports plaintiff's argument that the date of the discriminatory

act was March 12, 2004. However, plaintiff's contention is belied not only by his own

admissions but by other evidence in the record. On December 29, 2003, plaintiff appealed the

agency's denial of his transfer request to the HTRB. The record does not contain a copy of the

appeal, however, in the complaint, plaintiff alleged:

> Plaintiff's December 29, 2003 HTRB appeal EC included allegations
> of discrimination, stating "Understanding Your Rights, published as
> part of the Department of Justice and FBI Equal Employment
> Opportunity (EEO) program, states "We are obligated to do what it
> takes to ensure our workplace is an environment free from
> discrimination or perceived discriminatory practices . . ."
>
> Plaintiff's December 29, 2003 EC also noted "MAOP Part 1, section
> 1-19h, states "employees shall act impartially and not give preferential
> treatment to any private organization or individual".
>
> The December 29, 2003 EC compared plaintiff's request with that of
> Johnson's.
>
> The December 29, 2003 EC identified the fact that "the Administrative
> Services denial decision was made in the absence of a MAOP-required
> interview and written recommendation . . . The SAC or Division Head
> must interview the employee concerning the circumstances of the
> hardship . . . no such interview was conducted . . ."

Moreover, in the March 2006 decision, the ALJ concluded:

> Complainant can establish the first element of a *prima facie* case,
> based on the fact that he first sought EEO counseling in this case on
> or about March 15, 2004 shortly after first learning that his transfer
> **appeal was being denied**; thereafter, his requests were still refused.

(Emphasis supplied).

Clearly, there is conflicting evidence with regard to the parties understanding of the date

of the discriminatory act. However, evidence suggests and caselaw supports the conclusion that

the alleged discriminatory act(s) occurred on October 8, 2003. Plaintiff acknowledged this decision and filed an appeal with the HTRB on December 29, 2003. Plaintiff admittedly complained of alleged discriminatory practices in connection with the denial of his transfer request. This Court adopts the majority view and finds that the HTRB's denial of plaintiff's appeal was not the date of the discriminatory act. Plaintiff's appeal of the agency's decision to deny his transfer request does not toll the 45-day period which began to run on October 8, 2003, the day he was informed of Kendrick's decision. *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004) (holding that an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination); *see also Hartz v. Adm'r of Tulane Educ. Fund*, 275 F.App'x 281, 287 (5th Cir. 2008) (citations omitted) (the operative date from which the limitations period began to run was the date the plaintiff was notified that she was denied tenure and was not tolled during the pendency of a grievance).

However, the Court cannot end its inquiry there. Even assuming that the date of the alleged discriminatory act was October 8, 2003, plaintiff argues that defendant waived the timeliness objection.

### 2.    Waiver of Defense

Plaintiff claims that defendant accepted and investigated his complaint and thus, waived the timeliness objection. In response to plaintiff's argument, defendant cites *Belgrave v. Pena*, 254 F.3d 384 (2d Cir. 2001) claiming that the Second Circuit rejected, "an identical argument". In *Belgrave,* the Second Circuit held that "agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint". *Id.* at 387 (citations omitted). While defendant correctly cites the holding of *Belgrave*, defendant ignores the Second Circuit's subsequent ruling in *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir.

20

2002).  In *Bruce*, the Second Circuit expanded upon its ruling in *Belgrave* and held, "[a]n agency

waives a timeliness objection by making an express finding that the complaint was timely or

failing to appeal the EEOC determination of timeliness.  *Id*.  The Court noted that the "express

factual finding of timeliness distinguishes the instant case from *Belgrave v. Pena*".  *Bruce*, 314

F.3d at 74.  The Court reasoned:

> Our holding in *Belgrave* was grounded in the policy that we should
> not discourage government agencies from investigating and
> voluntarily remedying discrimination out of trepidation that doing so
> would forfeit a potential defense in a future lawsuit. (citation omitted).
> In reaching today's result, we offer this caution: an agency that takes
> the next step of explicitly finding a complaint timely and
> communicating that unqualified finding to the complainant cannot
> retreat from that finding. In no way does our ruling alter *Belgrave* and
> the solid policy concerns underlying it.

*Id.*

Further, in *Bruce*, the Second Circuit noted its approval of the Seventh Circuit's holding

in *Ester v. Principi*, 250 F.3d 1068, 1071-72 (7th Cir. 2001).  In *Ester*, the Seventh Circuit

concluded that, "when an agency decides the merits of a complaint, without addressing the

question of timeliness, it has waived a timeliness defense in a subsequent lawsuit."  *Bruce*, 314

F.3d at 75 (quoting *Ester*, 250 F.3d at 1071-72).  The Court held that *Ester* did not apply to the

plaintiff's case because the *Ester* holding did not address the situation where a government

agency makes a specific finding of timeliness and communicates that to a complainant. *Id*. at 75.

However, the Court regarded the *Ester* holding as "sound" and "good law".  *Id*.; *see also Tyree v.

Zenk*, 2007 WL 527918, at *8 (E.D.N.Y. 2007) (holding that the defendant overlooked the

*Bruce's* court approval of the ruling that, "when an agency decides the merit of a complaint,

without addressing the question of timeliness, it has waived a timeliness defense in a subsequent

lawsuit").

In the case at hand, the record supports plaintiff's argument.  Specifically, in Ventura's August 31, 2004 letter, she stated:

> Reference is made to our letter to you dated July 20, 2004, which, addressed problems you faced with EEO Counselor Joe Majorowitz, and directed you to contact a new counselor, which you did on July 26, 2004.  The Office of Equal Employment Opportunity Affairs (OEEOA) waived the 45-day counselor contact deadline due to the problems you experienced in obtaining informal counseling.

Plaintiff's position is further bolstered by the March 2006 EEOC decision.  In the decision, the ALJ discussed and summarized the parties submissions and arguments and failed to acknowledge or indicate that defendant made a timeliness argument.  The ALJ issued a decision on the merits of plaintiff's complaint without any reference to timeliness.

The record, with respect to this issue, is sparse.  Other than the documentation referenced herein, there is no evidence regarding plaintiff's contact with the EEO counselor, the EEOC proceedings or defendant's participation in proceedings conducted by the EEOC.  At this juncture, based upon *Bruce, Ester*, the absence of discovery and particularly in view of plaintiff's *pro se* status, the Court finds it would be premature to conclude plaintiff is not entitled to the benefit of the waiver defense.  Based thereupon, the motion by defendant for judgment on the pleadings and  dismissal of plaintiff's gender discrimination claims based upon plaintiff's failure to exhaust his administrative remedies is denied.

## C.      Prima Facie Case - Facts Establishing an Adverse Action

In the alternative, defendant moves for judgment on the pleadings and dismissal of plaintiff's gender discrimination claims based upon plaintiff's failure to allege a *prima facie* case. Defendant argues that plaintiff did not suffer an adverse employment action because he was denied a "purely lateral transfer" that did not result in any significant changes in the conditions of

his employment.   Plaintiff claims that he sought a "medical hardship transfer" not a "lateral transfer".

Plaintiff's burden is not so onerous at the pleading stage; complaints of discrimination need not, "contain specific facts establishing a *prima facie* case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (citation omitted). Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  In *Swierkiewicz*, the Supreme Court explained that to require that a complaint of employment discrimination do more than "give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" would thwart the plain meaning of Rule 8.  *Swierkiewicz*, 534 U.S. at 511.

The plaintiff can meet the third requirement of a *prima facie* case by establishing that he was subject to a materially adverse change to the terms and conditions of his employment. *Galabya v. New York City Board of Educ.*, 202 F.3d 636, 640 (2d Cir.2000).  Here, to sustain a *prima facie* case, plaintiff must establish that defendant's denial of his request for a transfer created a materially significant disadvantage in his working conditions.  *Williams v. R.H. Donnelley, Corp.*,  368 F.3d 123, 128 (2d Cir. 2004).  A denial of a transfer request may constitute an adverse employment action where plaintiff: (1) establishes that his work environment prior to the request is objectively unfavorable, *Pimentel v. City of New York*, 2002 WL 977535, at *3 (S.D.N.Y. 2002); or (2) "adduces sufficient evidence to permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the

employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability." *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F.Supp.2d 272, 298 (S.D.N.Y. 2009) (citing *Beyer v. County of Nassau,* 524 F.3d 160, 165 (2d Cir. 2008)); *cf. Momah v. Dominguez*, 239 F.App'x 114, 124 (6th Cir. 2007) (citations omitted) (holding that the plaintiff failed to produce evidence from which a jury could conclude that the denial of his request to be transferred to a position in Detroit would be adverse to a reasonable person or that a position in Memphis was objectively worse than the identical position in Detroit).

However, "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action." *Williams*, 368 F.3d at 128 (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532-33 n. 6 (10th Cir.1998)).  Subjective, personal disappointments do not meet the objective indicia of an adverse employment action.  *Id.*  A denial of a request to transfer to an office of the same agency or department in a location more convenient to the employee's home, where there will be no significant change in duties or opportunities for advancement does not constitute an adverse employment action.  *Pimental,* 2002 WL 977535, at *4 (citations omitted). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'"  *Nonnenmann v. City of New York*, 174 F.Supp.2d 121, 133 (S.D.N.Y. 2001), *overruled on other grounds by Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121 (2d Cir. 2005).

Here, defendant argues that plaintiff sought a "purely lateral transfer" and failed to allege any significant changes in his employment as a result of the denial of the transfer request.  Thus,

24

defendant argues that nothing changed in plaintiff's existing job to establish an adverse action.  In opposition, plaintiff claims a medical hardship transfer has "significant value . . . far above what might be considered routine" including the, "possibility of alleviating the underlying medical problems 'unique to a particular situation'".  Moreover, plaintiff claims that the FBI, "pays for the costs associated with permanent medical hardship transfers, as opposed to FBI no-cost temporary hardship assignments".

Given plaintiff's *pro se* status, it is premature to make a determination regarding this *prima facie* element of his discrimination claim.  While the complaint is by no means a wealth of factual information, it gives defendant fair notice of the basis of plaintiff's claim.  The Court cannot find, at this juncture, that plaintiff requested a "purely lateral transfer".  The record does not contain sufficient evidence to enable the Court to conclude that plaintiff will be unable to present evidence that the denial of transfer did not create materially significant changes in his working conditions or that the working conditions in the Philadelphia office were not objectively unfavorable.

The Court is aware that a number of district courts in this circuit have held that a denial of a hardship transfer request was not an adverse employment action.  *See Duncan v. Shalala*, 2000 WL 1772655 (E.D.N.Y. 2000); *see also Nonnenmann*, 174 F.Supp.2d at 133; *see also Pimental*, 2002 WL 977535, at *5.  However, those cases are distinguishable as each involved a motion by the defendant for summary judgment upon the completion of discovery and thus, a different standard of proof.

Accordingly, defendant's motion for judgment on the pleadings and dismissal of plaintiff's gender discrimination claims is denied. The government may again move to dismiss these claims upon completion of discovery.

25

**D.     Prima Facie Claim of Retaliation**

Defendant also moves for judgment on the pleadings and dismissal of plaintiff's retaliation claims.  Defendant contends that plaintiff failed to establish a *prima facie* claim of retaliation because: (1) some of the alleged retaliatory acts predated plaintiff's engagement in protected activity; and (2) the alleged retaliatory acts are not materially adverse and amount to nothing more than petty slights or minor annoyances.  Plaintiff claims that he experienced retaliation that would dissuade a reasonable employee from making a claim of discrimination. Plaintiff argues that these acts included: (1) false statements by defendant's employees intended to mislead and obstruct plaintiff's discrimination investigation; (2) defendant's failure to conduct a SAC interview pursuant to MAOP guidelines; (3) defendant's non-random selection of HTRB members; (4) defendant's admonishment of plaintiff for pursuing informal appeal rights; (5) false statements by defendant's employees to plaintiff's Congressman; and (6) defendant's demand that plaintiff pay the balance on his government credit card.

In order to establish a *prima facie* case of retaliation, a plaintiff must present evidence that would permit a rational trier of fact to find that: (1) he engaged in protected participation or opposition; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006) (internal citations omitted).  As previously noted, at the pleadings stage, a plaintiff is only required to give fair notice to the defendant of the claims and the grounds upon which it rests in order to defeat a motion to dismiss. *Jordan v. Potter*, 2007 WL 952070, at *7 (E.D.N.Y. 2007) (citing *Swierkiewicz*, 534 U.S. at 512).  The holding in *Swierkiewicz* also applies to plaintiff's retaliation

claims.  *Id*. (citing *Williams v. New York City Housing Auth.*, 458 F.3d 67, 72 (2d Cir. 2006)).

### 1.     Protected Activity

Defendant argues that "it is undisputed that plaintiff engaged in protected activity when he contacted an EEO counselor in March 2004".  Thus, defendant contends that the following alleged retaliatory acts predated the protected activity: (1) the denial of a "SAC" interview in connection with his transfer request; (2) plaintiff's claim that the Transfer Unit did not timely acknowledge receipt of his appeal; and (3) the improper selection of HTRB voting members.

While contact with an EEO counselor generally constitutes a "protected activity", the record does not support defendant's claim that this contact was the **first** protected activity that plaintiff engaged in.  The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134-35 (2d Cir.1999).  Informal as well as formal complaints constitute protected activity.  *See Sumner v. U.S. Postal Serv*., 899 F.2d 203, 209 (2d Cir.1990).  Protected activities include "making complaints to management," and may be in the form of a simple "objection voiced to the employer".  *Rodriguez v. Beechmont Bus Serv., Inc*., 173 F.Supp.2d 139, 149 (S.D.N.Y. 2001) (internal citations omitted).  "Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." *Patane v. Clark,* 508 F.3d 106, 115 (2d Cir. 2007). All that is necessary for the complaint to constitute a "protected activity" is that the plaintiff demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Holava-Brown v. Gen. Elec. Co.*, 1999 WL 642966, at *3 (2d Cir. 1999) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)) (internal quotation marks omitted).

In the complaint, plaintiff does not identify his "protected activity".  However, the complaint provides defendant with fair notice of plaintiff's retaliation claim and the grounds upon which they rest.  *See Jordan*, 2007 WL 952070, at *8 (despite the plaintiff's failure to identify the protected activity and whether the defendant was aware of that activity or the causal connection, the defendant's motion to dismiss was denied as the complaint provided the defendant with fair notice of the claims).  Based upon the record, plaintiff made complaints of discrimination in his HTRB appeal filed in December 2003.  Defendant failed to address this issue or argue that plaintiff's appeal did not constitute a "protected activity".  Plaintiff had a "reasonable belief that his employer violated the law" in December 2003 and therefore, plaintiff's appeal constitutes a "protected activity".

While defendant improperly assumes that the date of the protected activity was March 2004, defendant correctly argues that any act by defendant that predated plaintiff's protected activity cannot be retaliatory.  Based upon the record, plaintiff was not interviewed in connection with the hardship transfer before the request was denied.  Defendant's failure to interview plaintiff occurred **before** plaintiff filed his appeal in December 2003.  Accordingly, the Court finds that plaintiff's claim that he was denied a SAC interview in retaliation for engaging in a protected activity is subject to dismissal.  Plaintiff's remaining claims of retaliation; i.e.; failure of the Transfer Unit to timely acknowledge receipt of his appeal and the improper selection of HTRB voting members, occurred after plaintiff engaged in protected activity and thus, are not subject to dismissal on this basis.

## 2.    Adverse Employment Actions

With respect to the third factor, adverse action, in the case of *Burlington Northern & Santa Fe Railway  v. White*, 548 U.S. 53, 67 (2006), the Supreme Court held that Title VII's

substantive provisions and its anti-retaliation provision are not "coterminous".   Rather, the Court held that a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means that it might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' "   *Id*. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (C.A.D.C. 2006)).   Title VII's core anti-discriminatory provisions are narrower than Title VII's retaliation provisions and what might not qualify as an adverse employment action under Title VII's anti-discrimination provisions may still violate Title VII's anti-retaliation provisions.  *Id*.  Retaliation can be actionable even when the alleged adverse action "had not effected any change in [the employee's] salary, benefits, job, title, grade or hours".  *Kessler*, 461 F.3d at 201.  Any reasonable employee that believed that her employers would engage in a concerted effort to drive her from her job if she engaged in Title VII protected activity would think twice about doing so.  *Patane,* 508 F.3d at 116.   Although the Court "loosened the standard previously applied in retaliation claims", the *White* standard is still a rigorous one.  *Dixon v. City of New York*, 2008 WL 4453201, at *11 (E.D.N.Y. 2008).

"Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). Petty slights, minor annoyances, and simple lack of good manners will not deter a worker from making a charge of discrimination.  *See Burlington Northern*, 548 U.S. at 68.  A plaintiff must show "material adversity," because "it is important to separate significant from trivial harms." *Guzman v. Macy's Retail Holdings, Inc*., 2010 WL 1222044, at *6 (S.D.N.Y. 2010) (citing *Burlington*, 548 U.S. at 68). "[A]lleged adverse employment action must be viewed from the perspective of the reasonable employee, 'because [Title VII's] standard for judging harm must be objective' to avoid 'the uncertainties and unfair discrepancies that can plague a judicial effort to

29

determine a plaintiff's unusual subjective feelings.'" *Id.* (citing *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F.Supp.2d 599, 627 (S.D.N.Y. 2009)).

Defendant claims that the majority of plaintiff's allegations of retaliation involve nothing more than petty slights or minor annoyances including: (1) the Transfer Unit's alleged failure to acknowledge receipt of plaintiff's appeal until February 2004; (2) the improper selection of HTRB voting members; (3) defendant's failure to timely respond to plaintiff's informal appeal; (4) the EEO counselor's failure to timely respond to plaintiff's complaint; (5) the false statements provided by defendant's witnesses to the EEO counselor; (6) misleading responses to the Congressman's inquires; (7) the FBI's request that plaintiff repay his credit card; and (8) the FBI violated the privacy act when it provided plaintiff's name and address to a collection agency and Bank One.  Defendant also argues that plaintiff's allegation involving an alleged "reprimand" for contacting the EAD was not a "materially adverse" employment action.

In this case, plaintiff alleges specific examples and a pattern of inappropriate conduct. The truth of these allegations is not to be examined in a motion to dismiss.  Plaintiff has set forth sufficient detail in his allegations to encompass "adverse treatment", when viewed collectively, could deter a reasonable employee from making subsequent complaints.  *See Spade v. Pepsi Bottling Group, Inc.*, 2007 WL 1982781, at *2 (E.D. Cal. 2007) (holding that the plaintiff's allegations of being "ostracized" and "ignored during meetings" were sufficiently alleged to avoid dismissal).  Plaintiff has adequately alleged a number of incidents that could rise to the level of a materially adverse employment action.  *See Jamison v. Chapman*, 2009 WL 3762348, at *7 (N.D.N.Y. 2009) (holding that a police officer's visit to the plaintiff's residence may confer a high level of intimidation that would dissuade a reasonable employee from making additional charges).

30

Moreover, plaintiff's allegation that he was reprimanded for speaking with the EAD could be considered a threat that would dissuade a reasonable employee from continuing to pursue his complaint of discrimination and thus, materially adverse.  *See Pezoa v. County of Santa Clara*, 2006 WL 2263946, at *6 (N.D.Cal. 2006) (holding that the defendant's alleged remark that if "any member met with 'the union' before speaking to him 'they would be reprimanded,'" might amount to a threat that might dissuade a reasonable employee from continuing to pursue a complaint of discrimination).

As previously discussed, plaintiff bears no burden at the pleading stage.  Defendant has presented arguments with regard to the merits of plaintiff's claim which are premature and improper on a motion to dismiss at this stage of the litigation.  Drawing all inferences in favor of plaintiff, the complaint sufficiently alleges a cause of action for retaliation.  Accordingly, defendant's motion for judgment on the pleadings and dismissal of plaintiff's retaliation (second) cause of action is denied.

### III.    PLAINTIFF'S MOTION TO SUPPLEMENT COMPLAINT

Plaintiff filed a motion for leave to file a supplemental complaint.  Defendant opposes plaintiff's motion arguing that plaintiff's motion makes repetitive arguments previously addressed in his motion for judgment on the pleadings.  Defendant also contends that the supplemental complaint is futile as it improperly alleges separate causes of action against defense counsel.

Rule 15(d) of the Federal Rules of Civil Procedure states in relevant part:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

Fed. R. Civ. P. 15(d).  "The Court may grant such a motion, in the exercise of its discretion, upon

reasonable notice and upon such terms as may be just.  Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  "[L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading. *Id.* (citing *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir.1989)).  The Court has reviewed plaintiff's proposed pleading liberally in light of his *pro se* status.  *See Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir.2005) (*pro se* pleadings to be construed liberally).

Notwithstanding the ordinarily lenient standard imposed, if the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Orelvis v. State of New York Dep't of Corr. Servs.*, 2007 WL 5658934, at *2 (W.D.N.Y. 2007) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 131)).  Any amendment or supplementation of a pleading that raises a new claim is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Wingate v. Gives*, 2009 WL 424359, at *4 (S.D.N.Y. 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)).  Thus, the court "must view the claim in the light most favorable to the moving party and determine whether there is a colorable claim for relief." *Orelvis,* 2007 WL 5658934, at * 2 (citing *Santiago v. Steinhart*, 1993 WL 410402, *2 (S.D.N.Y.1993)).  If a proposed claim sets forth facts and circumstances which may entitle the pleader to relief, then futility is not a proper basis on which to deny the right to amend.  *Farid v. Bouey,*  554 F.Supp.2d 301, 328 (N.D.N.Y. 2008) (citations omitted).  In some instances where the plaintiff proceeds *pro se*, courts have held that although the claims may not survive a motion to dismiss and the supplementation may ultimately prove futile, in the interest of justice, the

plaintiff was afforded a reasonable opportunity to clarify his claims. *Bemben v. Fuji Photo Film U.S.A., Inc*., 2003 WL 21146709, at *1 (S.D.N.Y. 2003).

In his motion, plaintiff identifies transactions or events that have transpired since he filed his complaint on August 6, 2007.  In the proposed supplemental complaint, plaintiff asserts a third cause of action against defendant alleging additional retaliatory acts:

> Defendant's retaliation came in part in the form of dozens of false accusations against plaintiff for Privacy Act rights violations and Protective Order violations.  Defendant's false allegations were made in defendant's submissions to the Court, in correspondence to a U.S. District Court Chief Judge, during a hearing before a U.S. Magistrate Judge, and in court documents available to the public.

> Defendant further retaliated against plaintiff by falsely accusing plaintiff of Privacy Act rights violations and Protective Order violations in response to plaintiff's use of nothing more than public information, information in the form of Maryland Workers' Compensation Commission Procedural Regulations, and information obtained directly from representatives of the Maryland Workers' Compensation Commission.

*See* Plaintiff's Proposed Supplemental Complaint (paragraph numbers omitted).

Defendant argues that the supplemental allegations are "futile" because plaintiff has placed the intent of defendant's counsel, the Assistant U.S. Attorneys, at issue.  Defendant cites to authority supporting the argument that a plaintiff may not sue defense counsel in an employment discrimination action, *see Burgess v. Harris Beach PLLC*, 2008 WL 850336, at *12 (W.D.N.Y. 2008), and contends that if the Court allows the claim that, "depositions and discovery of opposing counsel will soon follow".   The Court has reviewed plaintiff's proposed supplemental complaint and finds no such allegation.  Plaintiff's supplemental complaint asserts a third cause of action against defendant.  Plaintiff does not seek to add defense counsel as a party to the action and indeed, made no reference to defense counsel or the U.S. Attorney's office in the proposed

33

supplemental complaint. The proposed additional retaliation claim is against defendant and is

based on events that occurred after defendant filed an answer to the complaint.  Defendant has

failed to establish how the supplement would significantly delay the resolution of this action.  *Cf.*

*LeBron v. Selsky*, 2009 WL 6312275, at *18-19 (N.D.N.Y. 2009) (request to supplement denied

because four and one-half years elapsed between the filing of complaint and the plaintiff's request

to supplement, discovery was completed and the defendant filed a motion for summary

judgment). The Court has reviewed defendant's opposition and finds that defendant presents no

other argument in opposition to plaintiff's motion to supplement the complaint to include

additional allegations of retaliation.  Accordingly, the Court grants plaintiff's motion to

supplement the complaint.

## IV.    SEALING ORDER

On January 13, 2009, at defendant's request, Magistrate Judge Lowe issued the following

Sealing Order:

> ORDER denying Deft's request that Agent Johnson testify; Sealing all
> present and future filings; If Pltf objects to the sealing of this case, any
> objections shall be filed w/in 10 days of the date of this order; Deft to
> respond to any objections w/in 10 days following receipt of the
> objections.

(Dkt. No. 69).

The public has a common law presumptive right, and a constitutional right, of access to

judicial documents. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) (citing *U.S.*

*v. Amodeo*, 44 F.3d 141, 145-46 (2d Cir. 1995) (collecting cases)).  Moreover, "[e]very court has

supervisory power over its own records and files.  *Id*. at 141 (citing, *inter alia, Nixon v. Warner*

*Commc'ns, Inc*., 435 U.S. 589, 598 (1978)).  "It is undisputed that a district court retains the

power to modify or lift protective orders that it has entered." *Id.* (citing *In re "Agent Orange"*

*Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir.), *cert. denied*, 484 U.S. 953 (1987)).  In *Gambale*,

the Second Circuit, quoting the First Circuit, concluded:

> [A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment.
>
> This retained power in the court to alter its own ongoing directives provides a safety valve for public interest concerns, changed circumstances or any other basis that may reasonably be offered for later adjustment.

*Id.* (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993)).

In this instance, the Court has weighed the competing interests of the public right of

access to court documents with the interests of the parties.  Upon review, the Court concludes that

the scope of the Sealing Order is overly broad.  There is no need to limit the public's access to all

records or to preserve the secrecy of all documents filed in this matter.  Accordingly, the Court

acts, within its discretion, to unseal the records.  Thus, the parties are advised that the Court

intends to unseal this case on April 29, 2011.  However, the August 2008 Protective Order shall

remain in full force and effect.  Any party seeking to maintain a document as "Confidential" or

"Subject to the Protective Order", shall submit an affidavit by a person with personal knowledge

of the facts, containing the following: (a) identification of the document with particularity ( i.e.

page and line); (b) identification of the document as his or its own submission or that of the

adversary;  (c) demonstrating the particular need for maintaining the information as confidential;

and (d) annexing any proposed redactions together with the unredacted version for the Court's in

camera review **on or before April 26, 2011.**  *See Prescient Acquisition Group, Inc. v. MJ Pub.*

*Trust*, 487 F.Supp.2d 374, 375 (S.D.N.Y. 2007).

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 14), which the Court has deemed a motion to strike, is **DENIED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 49) and dismissal of plaintiff's claim that defendant retaliated against him by failing to conduct a SAC interview in compliance with § 11-4.1 of the Manual of Administrative Operations in connection with plaintiff's request for a hardship transfer is **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 49) and dismissal of plaintiff's complaint is otherwise **DENIED**; and it is further

**ORDERED**, that plaintiff's motion to supplement the complaint (Dkt. No. 57) is **GRANTED**; and it is further

**ORDERED**, that plaintiff must file his supplemented complaint within 20 days of the issuance of this Order; and it is further

**ORDERED**, that within 30 days of receipt of plaintiff's supplemented complaint, defendant shall file an Answer and shall properly respond to the allegations in plaintiff's original and supplemented complaint as directed in this Order. The response shall consist of an admission or denial consistent with Fed.R.Civ.P. 8; and it is further

**ORDERED** that the Clerk of the Court is directed to unseal this case on April 29, 2011 in accordance with this Order. The Sealing Order dated January 13, 2009 (Dkt. No. 69) is hereby vacated. The parties are directed to provide any submissions regarding the confidentiality of any documents, as directed in this Order, on or before April 26, 2011; and it is further

**ORDERED** that the Clerk of the Court is directed to serve this Order upon plaintiff and defendants by regular mail and further, to serve this Order upon plaintiff by certified mail.

**IT IS SO ORDERED.**

Date:   March 30, 2011

_____
Norman A. Mordue
Chief United States District Court Judge