**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SALVATORE J. GIARRIZZO,**

                **Plaintiff,**

                                                  **07-CV-0801**
  **vs.**                                                  **(MAD/GHL)**

**ERIC H. HOLDER, United States Attorney General,**

                **Defendant.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

Salvatore J. Giarrizzo
102 Frasier Avenue
Johnstown, New York 12095
*Plaintiff Pro Se*

LORETTA E. LYNCH                    James R. Cho, Esq.
United States Attorney for              Assistant U.S. Attorney
the Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
*Attorney for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

      Plaintiff brings this action, *pro se*, pursuant to 42 U.S.C. § 2000e et seq. ("Title VII") based on the gender discrimination he claims to have suffered during his employment with the Federal Bureau of Investigation ("FBI"). Presently before the Court is plaintiff's renewed motion for sanctions pursuant to Federal Rules of Civil Procedure 26 and 37. (Dkt. No. 137). This motion has been the subject of several Court Orders. Most recently, this Court discussed

plaintiff's motion for sanctions in a Memorandum-Decision and Order dated January 5, 2012 (Dkt. No. 177). The Court held:

> Having reviewed the record and the contentious history regarding discovery, the Court finds that an evidentiary hearing is necessary to resolve plaintiff's request for sanctions (and possibly a spoliation charge) pursuant to Rule 37 and any other arguably relevant sanctions pursuant to Rule 26. Accordingly, the Court reserves decision on the motion for sanctions pending an evidentiary hearing.

On February 3, 2012, the parties appeared for a status conference. At the conclusion of the conference, the Court issued an Order with respect to the outstanding discovery issues and plaintiff's motion for sanctions:

> Defendant is directed to provide the Court and plaintiff with an Affidavit from a Custodian(s) of Records for the relevant time periods. The affidavit should address the following:
>
> (1) Whether a file exists regarding the documents presented by plaintiff at the appellate level;
>
> (2) Why plaintiff was advised that 152 male permanent medical hardship files existed yet 155 files were disclosed;
>
> (3) Why plaintiff was advised that 29 female permanent medical hardship files existed yet only 28 were disclosed;
>
> (4) Whether there are documents missing from the files that were disclosed.
>
> Defendant is to provide the Court and plaintiff with the aforementioned affidavit on or before February 21, 2012. The Court will hold plaintiff's motion for sanctions and request for an evidentiary hearing in abeyance pending the receipt and review of the affidavit(s).

(Dkt. No. 179).

On February 21, 2012, defendant provided three declarations executed by FBI employees: Sybrina R. Beanum, Nitonja Dacus and Bill L. Lewis. Ms. Beanum avers that the Transfer Unit provided, "a number of medical hardship transfer files to the Civil Discovery Review Unit

("CDRU")". The files were "unsorted" and Ms. Beanum asserts that the files were not altered nor were documents removed. The files were provided as they were maintained.

Ms. Dacus was a paralegal in the CDRU and received the files from the Transfer Unit. She was responsible for, "processing the files for release to the plaintiff". Ms. Dacus personally reviewed the files which spanned a ten year time period, 1998 through 2008 and stated that there was approximately 4000 pages of documentation. Ms. Dacus sorted the files by agent name and redacted the documents to protect the identities of the agents. Ms. Dacus avers that she did not remove or alter any documents in the file. Ms. Dacus provided defense counsel with a total of 155 male special agent transfer files and 28 female special agent transfer files.[1] Ms. Dacus stated that each agent was assigned a tracking number. From her review, Ms. Dacus asserts that the files for two male agents were contained in two separate records and were unintentionally produced twice. Ms. Dacus also asserts that she reviewed the transfer files from 2007 and 2008 to determine if additional documents had been added to the files. She determined that some documents were missing from the files for agents referred to as Tracking Nos. M99, M117 and M120. Those documents were annexed to Ms. Dacus' affidavit.

At the relevant time, Bill Lewis was the Unit Chief of the Transfer Unit. Mr. Lewis provided the Hardship Transfer Review Board ("HTRB") with plaintiff's medical hardship request documentation. After the HTRB recommended upholding the Transfer Unit's original decision, in accordance with his usual practice, Mr. Lewis believes that he placed all documentation back in the Transfer Unit file. Mr. Lewis avers that his staff has been unable to locate some documents relating to plaintiff's appeal including: (a) plaintiff's wife's hospital

---

[1] Defense counsel asserts that the discrepancy regarding the number of female medical hardship transfer files, 29 rather than 28, was a typographical error.

3

emergency room records; (b) plaintiff's military and cardiology medical records; and ( c ) general research relating to miscarriage, stress, infertility and heart disease.

On February 29, 2012, plaintiff provided a letter brief in response to defendant's submissions to the Court.  Plaintiff asserts that he has been "unduly burdened for almost four years trying to sort out the discovery mess".  Plaintiff reiterates his argument that documents are missing from the medical hardship transfer files of agents identified as Tracking M5, M91, M128, M38 and M29.

Upon review of the parties' submissions, the Court finds that an evidentiary hearing is not necessary.  *See In re Dynex Capital, Inc. Secs. Litig*., 2011 WL 2581755, at *3 (S.D.N.Y. 2011) (the Court has discretion to hold evidentiary hearing before imposing sanctions and hearing is not always necessary).

## DISCUSSION

Plaintiff seeks sanctions pursuant to Rule 26 and Rule 37 of the Federal Rules of Civil Procedure.  Plaintiff does not specify what type of sanctions he seeks to have the Court impose.

"Federal Rule of Civil Procedure 37 permits the Court to impose a variety of sanctions for discovery-related abuses." *Pall Corp. v. 3M Purification Inc*., 2011 WL 1118466, at *2 (E.D.N.Y. 2011). "The determination of an appropriate sanction, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-base basis". *Zubulake v. UBS Warbury LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).  The severity of sanctions imposed should be congruent with the degree of culpability. *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 288 (S.D.N.Y. 2009) (sanctions should be molded to serve the "prophylactic, punitive and remedial rationales").  Sanctions may include adverse inference instructions, preclusion of evidence or a judgement of default.  *Mikhlyn v. Bove*, 2011 WL 4529613, at *4 (E.D.N.Y. 2011)

4

(citing Fed. R. Civ. P. 37(b)(2)(A)).  Instead of, or in addition to these harsher sanctions, a court may order the disobedient party to pay reasonable expenses, including attorney's fees, unless the failure to obey a court order was "substantially justified" or the imposition of such would be unjust.  *Id*. (citing Fed. R. Civ. P. 37(b)(2)(C)).  "The Court's discretion in selecting an appropriate sanction is guided by a number of factors, including: '(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance'".  *Samad Bros., Inc. v. Bokara Rug Co., Inc*., 2011 WL 4357188, at *7 (S.D.N.Y. 2011) (citations omitted).

"Where [ ] the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation), to declare a mistrial if trial has already commenced, or to proceed with a trial and give an adverse inference instruction." *Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted).  "Where, as here, a party alleges that the opposing party failed to disclose documents it was required to produce, the moving party bears the burden of showing that its adversary failed timely to disclose information required by Rule 26".  *Pall Corp.*, 2011 WL 1118466, at *3 (quoting *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007).

**A.     Adverse Inference**

An adverse inference instruction is considered an "extreme sanction[s]" that "should not be given lightly." *Pall Corp*., 2011 WL 1118466, at *3 (collecting cases).  "An adverse inference instruction requires a demonstration by the moving party that its adversary possessed a 'culpable

5

state of mind' in failing to timely produce the evidence requested." *Id*. (internal citations and citations omitted).  A party seeking an adverse inference instruction based on the destruction of evidence must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  *Residential Funding Corp.,* 306 F.3d at 107.  When evidence is destroyed in bad faith, that fact alone is sufficient to support an inference that the missing evidence was relevant.  *Id*. at 109.  By contrast, when the destruction is due to negligence or recklessness, the moving party must prove relevance. *Id*. at 108-109.  "This corroboration requirement is . . . necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful." *Zubulake,* 220 F.R.D. at 221.  Speculation about documents is not sufficient to establish relevance.  *Pegoraro v. Marrero*, 2011 WL 5223652, at *11 (S.D.N.Y. 2011) (the plaintiff's speculation about the content of a personnel folder was insufficient to establish relevance).

  Based upon the record, the Court finds that plaintiff has failed to demonstrate that defendant acted in bad faith or with any intent to conceal documents sufficient to warrant an adverse inference instruction.  Plaintiff correctly cites to the Second Circuit holding, in *Residential Funding*, that "a culpable state of mind includes ordinary negligence".  However, plaintiff has not established the second element required when the alleged destruction is "negligent or reckless", to wit, relevance.  *See Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 221 (S.D.N.Y. 2003).  Plaintiff has not established that any of the alleged missing documents, i.e., documents from the medical hardship files of five agents, are favorable to his position.  Plaintiff

6

claims that the missing documents include medical officer findings, SAC interviews and decision letters. Plaintiff only identifies the alleged missing documents and speculates, without proof, that the documents support his claim. Indeed, plaintiff has not proven that the aforementioned documents exist. Plaintiff's speculation about the content of the transfer files of other agents does not establish that the files were relevant. Without proof that defendant's actions, "created an unfair evidentiary imbalance, an adverse inference charge is not warranted". *See Green*, 262 F.R.D. at 291.

**B.     Preclusion**

Preclusion is also considered a harsh sanction reserved for egregious conduct and requires the demonstration of prejudice to the moving party. *Pall Corp*., 2011 WL 1118466, at *3. "To determine whether evidence should be precluded, a court should consider: (1) the explanation for the failure to disclose, (2) the importance of the evidence to be precluded, (3) prejudice if the evidence were not precluded, and (4) the possibility of a continuance." *Gotlin v. Lederman*, 2009 WL 2843380, at *3 (E.D.N.Y. 2009) (citations omitted).   The imposition of preclusion sanctions does not require a showing of bad faith. *Id*. (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)).

Plaintiff has not presented any argument in support of preclusion as a possible sanction for defendant's alleged conduct. However, even assuming plaintiff's motion sought such relief, defendant has provided a sufficient explanation regarding the failure to disclose the items sought. Moreover, plaintiff has not established that he suffered any prejudice as a result of any delay in the production or defendant's alleged failure to produce documents. To the extent that plaintiff claims he is harmed by having to review the sheer volume of documents in a compressed time frame, plaintiff's discovery demands belie his argument. Defendant has produced 4000 pages of

documents in response to plaintiff's broad requests for discovery. *See Phoenix Four, Inc. v. Strategic Res. Corp.*, 2006 WL 1409413, at *8 (S.D.N.Y. 2006). While this sanction is not warranted, the parties are cautioned that should defendant attempt to introduce documents which were not produced in discovery as evidence in motion practice or trial, the Court is within its discretion to revisit the issue of sanctions at that time. *See Moll v. Telesector Res. Group, Inc.*, 2010 WL 4642931, at *9 (W.D.N.Y. 2010).

**C.     Monetary Sanctions**

"Monetary sanctions are appropriate to punish the offending party for its actions and to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated" and further, to compensate the movant for the cost incurred in bringing a motion for sanctions. *Green*, 262 F.R.D. at 292. Even when a court denies other requested relief, it may still impose monetary sanctions for discovery misconduct. *See Phoenix Four, Inc.*, 2006 WL 1409413, at *8 (citation omitted). Costs for which the party that requests sanctions may be compensated arise "either from the discovery necessary to identify alternative sources of information . . . or from the investigation and litigation of the document destruction itself." *Id*. (when the misconduct is late production of evidence, compensable costs may also arise from the need to re-depose witnesses). "Monetary sanctions awarded to compensate an aggrieved party for costs incurred as a result of the misconduct of another party or attorney must reasonably have resulted from such misconduct." *S.E.C. v. Smith*, 798 F.Supp.2d 412, 441 (N.D.N.Y. 2011).

Upon review of defendant's submissions, the Court finds that defendant's conduct was not egregious. Defendant performed reasonable searches and produced documents responsive to plaintiff's demands. However, defendant admits that some documents that were part of plaintiff's appeal to the HTRB cannot be located. Defendant argues that plaintiff has not suffered any

prejudice because most of the documents were copies of plaintiff's own documents. Defendant also asserts that subpoenas have been served to obtain plaintiff's medical records and defendant will produce the records received. The documents include plaintiff's wife's emergency room records and plaintiff's military/medical records.

While monetary sanctions are not warranted in this matter, in fairness to plaintiff, some cost must be borne by defendant. Thus, to the extent that plaintiff suffers any expense to duplicate or obtain the aforementioned records, the Court orders defendant to reimburse plaintiff for such costs. Plaintiff shall submit proof, to the Court, of the cost of obtaining such records including but not limited to any subpoena costs, copying costs or mailing expenses and any other reasonable costs that plaintiff is able to establish resulted from the defendant's failure to properly preserve plaintiff's HTRB appeal file. Upon review of that evidence, the Court may direct defendant to reimburse plaintiff for such expenses. *See Mazza v. Dist. Council for N.Y. and Vicinity United Broth. of Carpenters and Joiners of Am.*, 2010 WL 2976674, at *1 (E.D.N.Y. 2010). Moreover, defendant is reminded of it's ongoing duty to disclose any records it receives that are responsive to plaintiff's discovery demands.

For the reasons stated herein, plaintiff's motion for sanctions is denied.

## CONCLUSION

It is hereby

**ORDERED**, that plaintiff's motion for sanctions (Dkt. No. 137) is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 5, 2012
Albany, New York

Mae A. D'Agostino
U.S. District Judge